## ᾆ Myers *against* Myers.

The right to land acquired by actual settlement, is the subject of lien, levy, and sale by the sheriff; and when sold, the purchaser may continue and complete the settlement by a tenant.

ERROR to the common pleas of *Bradford* county.

John Myers and Harvey Kellogg against Henry B. Myers. Ejectment for a tract of land. The proof was, that an actual resident settlement had been made upon the land in dispute, by Jeremiah Myers, who sold to Harman Lovelace, who continued it; that a judgment was obtained against Lovelace, upon which execution issued, and the land was levied and sold by the sheriff to the plaintiffs, who brought this ejectment to recover the possession. And the court below (Herrick, president) charged the jury that the plaintiffs were entitled to recover, although it appeared they resided elsewhere, and never had actual possession of the land.

*Overton*, for plaintiff in error, cited 11 *Serg. & Rawle* 257.
*Elwell* and *Williston, contra*, whom the court declined to hear.

Per Curiam.—The plaintiffs below are purchasers of an improvement right on a judgment, and the defendant resists their claim to the possession, because they reside with their families elsewhere. Whatever objection there might be to a settlement by a tenant *ab origine*, there certainly can be none to the continuance of a settlement by the tenant of a purchaser at a sheriff's sale, else no creditor could purchase for his security without abandoning his previous residence and pursuits; nor could the settler sell to any one who would not be willing to perform the same condition. Moreover, it could not be told at the trial that these plaintiffs would not perform it, or what is much better, immediately complete the title by a warrant and survey. But we see no objection, even to the commencement of an improvement by an agent, which, being consistent with public policy, seems to be a matter between him and his principal. He might make the improvement for his own benefit, did he think proper to do so; but agreeing beforehand, and with his eyes open, to make it for another, it is difficult to imagine why he should not be bound. His agreement would be but a sale by anticipation of the title to be acquired by his act; and it would be one which, conflicting with no principle of policy, a chancellor would feel himself bound to enforce. Settlement rights were originally favoured, not to prevent monopoly—for it would have been

[Myers v. Myers.]

idle to attempt it—but to bring the waste land of the state into productive cultivation. It would be futile to prevent an individual from acquiring more than one farm by settlement, and yet to sanction, as has been done, in the face of the application system of 1765, the acquirement of any number of tracts by locations in the names of fictitious applicants. We have frequently heard this point mooted in private, as an important and a difficult one, but could never perceive the difficulty which was supposed to be involved in it. In every respect, therefore, the direction was proper.

Judgment affirmed.