400 A.2d 887

Rosanne P. EVERSON

v.

Robert W. EVERSON, and Walter A. Everson, Garnishee, Appellants at No. 579.

Rosanne P. EVERSON

v.

Robert W. EVERSON and Walter A. Everson, Garnishee.

Appeal of Robert W. EVERSON at No. 580.

Superior Court of Pennsylvania.

Argued Sept. 11, 1978.

Decided March 30, 1979.

Petition for Allowance of Appeal Granted June 13, 1979.

Thomas F. Traud, Jr., Allentown, for appellants.

Richard T. Muller, Hellertown, for appellee.

Before VAN der VOORT, WATKINS and MONTGOM-ERY, JJ.

WATKINS, J:

This is an appeal from the Court of Common Pleas of Lehigh County, Civil Division, and involves a question as to the validity of an attachment execution proceeding.

Plaintiff-appellee, Rosanne P. Everson, is the ex-wife of the defendant-appellant, Robert W. Everson. The appellant, Walter A. Everson, is the father of Robert W. Everson and is a party to this action as a garnishee of certain property interests of Robert W. Everson.

Plaintiff and defendant, residents of Arizona, were married on August 9, 1962. After nine and one-half years of marriage they separated and were divorced on October 10, 1973, pursuant to a decree of the Maricopa County, Arizona Courts. Arizona, part of the area of the United States which had at one time been governed by Spanish Law, is one of eight "community property" states in the United States. Rather than litigate each aspect of the dissolution of a marital relationship separately, Arizona conducts one proceeding which deals with all such issues at one time. The divorce, custody questions, and the disposition of property rights are all determined at once during such proceedings.

Throughout the course of the proceedings the defendant enjoyed an interest in 6250 shares of Everson Electric Company stock. This interest was created by the terms of the will of decedent's mother, Louise Everson, who died on June 2, 1965. Her will duly probated in Lehigh County, Pennsylvania provided in relevant part:

"THIRD: I give and bequeath fifty (50%) per cent of the Common Stock standing in my name on the books or record of Everson Electric Corp. to WALTER A. EVERSON, TRUSTEE, for the following uses and purposes:

"a. The income and/or dividends of said stock shall be accumulated and held by my trustee until either,

"(1) The sale of said stock by the trustee, or

"(2) The death of my husband, WALTER A. EVERSON.

"b. Upon the sale of said stock, and any accumulated income and/or dividends, or the death of my husband,

WALTER A. EVERSON, whichever event shall first occur, this trust shall terminate and I direct either my trustee, or alternate executor, to distribute the proceeds, or stock and accumulated income and/or dividends, in kind, in equal shares, to my sons, ROBERT and DAVID their heirs and assigns; however, in the event either or both, should die before either event occurs then to their issue, per stripes, and in the event of failure of issue then such share to the surviving son or if no survivor then both sons' share to the then living issue".

The Arizona courts concluded that this trust was not part of the community property of the parties and that it was the sole and separate property of Robert W. Everson since it was his prior to the marriage and his wife never attained any interest in it. The Arizona court did, however, order a distribution of various property owned by the parties which was located in Arizona and which the court concluded was community property. Appellant, Robert W. Everson, failed to obey the Arizona court order and after an appeal to the Arizona appellate courts a judgment in the amount of $596,-628.02 plus interest from January 27, 1977 was entered against him because he had refused to turn over a one-half share in the community property of the parties to his wife. When appellant absented himself from the jurisdiction of the Arizona courts, the Arizona judgment was transferred to Lehigh County, Pennsylvania, the situs of the aforesaid trust, pursuant to the *Uniform Enforcement of Foreign Judgments Act,* adopted by Pennsylvania via the *Act of December 22, 1965, P.L. 1157, 12 P.S. 921 et seq.* Attachment execution was immediately issued in Lehigh County and interrogatories were served upon the garnishee of the trust.

Appellant requested a stay of execution on the Lehigh County judgment based upon the fact that he had filed an appeal from the Arizona judgment with the Arizona appellate courts. This request was properly denied by the Lehigh County Court because appellant had failed to post the bond set by the Arizona court as a condition precedent to

the granting of any such stay of the proceedings as required by the *Uniform Enforcement of Foreign Judgments Act in 12 P.S. 924.* The appellant then filed a motion to strike the Lehigh County judgment on several grounds. This motion was denied by the Lehigh County Court of Common Pleas on November 29, 1977. From this order appellants now take this appeal.

Appellants claim that the court below erred in refusing to strike the Lehigh County judgment because that judgment is based on the law of "community property" which is repugnant to the law of Pennsylvania and therefore not entitled to "full faith and credit". Secondly, appellants argue that even if the judgment is entitled to full faith and credit it should be stricken because the Arizona court itself ruled that appellant's interest in the trust was his own separate, non-marital property. Finally, appellant contends that his interest in the trust is one that is not subject to attachment.

Taking appellant's final contention first, we must determine whether the interest of Robert W. Everson in his mother's testamentary trust is a vested interest or whether it is a contingent interest. If his interest is a vested interest, it is subject to attachment. *Patterson v. Caldwell,* 124 Pa. 455, 17 A. 18 (1889). Whether a remainder interest is vested or contingent depends upon the language employed in the instrument establishing the interest. Where a bequest in a will is made payable at a future time which is certain to arrive, and not subject to a condition precedent, it is vested where there is a person in esse, at the time of the decedent's death who is capable of taking when the time arrives, although his interest be liable to be defeated altogether by his own death. *McCauley's Estate,* 257 Pa. 377, 101 A. 827 (1917). A contingency interest is not attachable because one cannot attack a mere expectancy or bare hope of succession. *Packer's Estate,* 246 Pa. 97, 92 A. 70 (1914). However, any real, substantial interest in property is subject to attachment. *Gordon v. Rees,* 154 Pa.Super. 594, 36 A.2d 841 (1944). Robert Everson's interest in the testamentary trust is more than a contingent interest because his mother,

the testatrix, has died and the terms of her will, providing for his share of the trust, has created in him a present, fixed right of future enjoyment. *41 P.L.E. Wills 481.* Although the possibility exists that he will never realize his full rights under the will, if he dies without issue, this does not render his interest a contingent one. Rather, he has a vested interest under the will which is subject to divestiture (his death) since the language of the will clearly indicates an intent on the part of the testatrix to create a vested interest in her son, Robert,[1] and since Robert was a person in esse at the time of his mother's death who is capable of taking when the time arrives.

■ We also reject the contention that *20 Pa.C.S.A. 3377,* a section of the Probates, Estates and Fiduciary Code which prohibits execution against a decedent or his personal representative absent the agreement of the personal representative or the approval of the court, prohibits the execution because this execution is against a beneficiary of the estate and not the decedent or her personal representative. The execution is against Walter Everson as garnishee for Robert Everson, his son and not against him as personal representative of the estate of Louise Everson.

Therefore, we hold that Robert's interest in the trust created under his mother's will is a vested interest subject to divestiture and that therefore it is an attachable interest.

■ Appellant's second argument is that the Pennsylvania judgment should be stricken because the Arizona court itself held that the Everson trust was not subject to the community property laws. We agree with the Arizona court that the trust is not subject to community property laws. Furthermore, as will be discussed in more detail below, we do not feel constrained to accept the decision of the Arizona courts as to the status of the trust because the trust has no contact with Arizona, the trust itself and its assets are located solely in Pennsylvania, and that therefore only Pennsylvania and not Arizona has the jurisdiction to determine the status of the trust assets.

1. *Houston Estate,* 414 Pa. 579, 201 A.2d 592 (1964).

■ We recognize, however, that the judgment entered in Lehigh County, Pennsylvania, pursuant to the *Uniform Enforcement of Judgments Act*, which has been adopted as the law of Pennsylvania, does not purport to stand for the proposition that the trust is community property nor is its validity dependent in any way upon its status as community property or not. The judgment entered in Pennsylvania was not based upon Robert Everson's refusal to transfer to his wife a portion of the Everson trust. No Arizona court ever ordered him to do so. The judgment was entered because of appellant's refusal to comply with an order of the Arizona courts directing him to transfer to his wife a one-half share of the property owned by the parties *in Arizona*. (Emphasis ours) Therefore, the fact that Robert Everson's interest in the trust is not a part of the community property of the parties' does not affect the validity of the judgment or the execution brought pursuant thereto.

Appellants' most serious argument is that the Pennsylvania judgment should have been stricken because its basis is the law of community property which is repugnant to the law of Pennsylvania and that therefore our courts should inquire as to the validity of the judgment entered in Arizona as its affects property held in Pennsylvania.

■ The Uniform Enforcement of Judgments Act, as adopted by both Arizona and Pennsylvania, provides that any foreign judgment of a court of the United States or of any other court requiring the payment of money shall be entitled to full faith and credit so long as the procedures for filing such judgment in Pennsylvania have been met. *12 P.S. 921, 922.* Since appellee complied with the technical filing requirements of the Act the judgment is valid unless some particular overriding reason exists which would require us to deny full faith and credit to the judgment. Judgments transferred under the Act are to be given full faith and credit and the Act does not entitle a party to raise any and all defenses which destroy the full faith and credit obligation. *Morris Lapidus Assoc. v. Airportels, Inc.*, 240 Pa.Super. 80, 361 A.2d 660 (1976). A lack of jurisdiction on

the part of the court which originally awarded the judgment or a lack of due process on the part of that court are reasons why the principle of full faith and credit would be denied and the subsequent Pennsylvania judgment stricken. For example, had the Arizona court or the court of any community property state attempted to enforce a ruling that property situated in Pennsylvania was community property and rendered a judgment based upon that ruling then the judgment would not be entitled to full faith and credit because the Arizona court did not have jurisdiction over the Pennsylvania property. This would be particularly so in the case of real estate which is not movable and must be subject to the law of its situs. *Coral Gables v. Jones*, 323 Pa. 425, 187 A. 434 (1936). Real estate in Pennsylvania can never be community property as defined by the community property states and the courts of such states have no jurisdiction over such property and any attempt to transform Pennsylvania real estate into community property as defined by community property states is a nullity. This is so because the concept of "community property" is repugnant to the law of Pennsylvania as appellants suggest. *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581, 55 A.2d 521 (1947). See also, *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Or if our courts were to determine that the parties were not bona fide residents of Arizona then the judgment entered here which is based on the Arizona judgment would be invalid for want of jurisdiction on the part of Arizona. *Stambaugh v. Stambaugh*, 458 Pa. 147, 329 A.2d 483 (1974).

In the case of personal property the issue becomes more complicated because such property is movable and in the case of securities or intangible assets determining the actual situs of such property may be difficult. However, we need not decide such issues here as the Arizona court itself decided that the Everson Trust was the sole and separate property of Robert Everson and there is no question as to the fact that that court did have proper jurisdiction over the parties to the action, who were both bona fide residents of Arizona for over nine years, or over the marital property

owned by the parties in Arizona. The judgment entered in Pennsylvania, therefore, was not an attempt by the Arizona court to transfigure the Pennsylvania trust into community property. Rather it was entered due to Robert Everson's refusal to obey a lawful Arizona court order which correctly ruled that the assets of the parties located in Arizona were subject to its community property laws. The execution proceeding in Pennsylvania is *not* an attempt to foist the principles of community property law *upon* Pennsylvania. Had Robert Everson obeyed the Arizona court relative to the Arizona assets the judgment as to the Pennsylvania trust would not be valid for want of jurisdiction over that asset on the part of Arizona. Such is not the case, however, as Everson has defied the valid Arizona court order. Therefore, he has no one to blame but himself for his present predicament. Since we have determined that the original Arizona judgment was valid because jurisdiction was properly exercised thereto we hold that the Pennsylvania judgment is valid and that the court below was correct in refusing to strike that judgment.

Two ancillary allegations raised by appellants likewise are devoid of merit. Appellants claim that they are entitled to a hearing to resolve various factual disputes relative to the status of the trust. They argue that at such a hearing they would be able to show that Robert Everson's interest in the trust is a contingent one rather than a vested one. With this we disagree. The question of the status of the trust is a legal one and we fail to see any additional facts which could be developed which would lead to a different result than the one we have reached. Appellants desire to enter testimony concerning the testatrix's intent at the time she executed the will establishing the trust. Such testimony would only be admissible where the intent of the testatrix was not clear from the wording of the instrument and where other evidence of her intent would be of help to the court in ascertaining her intent. In the instant case, the language of the will and trust is clear and speaks for itself. Thus, the court is not in need of any additional facts to ascertain that intent. Since the intent of the testatrix can

574

be garnered from an examination of the testamentary language and scheme of the will no new facts nor hearing thereon would be of any value. *Woodward Estate*, 407 Pa. 638, 182 A.2d 732 (1962). Thus, the court was correct in entering a judgment on the pleadings.

Finally appellants argue that the Arizona court's judgment in favor of appellee was improper because of alleged procedural errors committed by that court. This issue we refuse to decide as the nuances of Arizona procedural law are better left to the Arizona court system. As stated above, we will only review whether the Arizona court had proper jurisdiction over the parties and the property and whether a blatant denial of due process had deprived appellant of some basic constitutional right. Otherwise we will refrain from deciding the particular procedural points that appellants have raised here. Since Robert Everson was represented by counsel in Arizona, had notice of the various hearings conducted there, had the opportunity to present evidence and question appellee's witnesses and had the right to argue and appeal his case there we find that he was subject to no blatant denials of due process.

The order of the court below refusing to strike the judgment is affirmed.